RECEIVED IN
COURT OF CRIMINAL APPEALS

June 12, 2015

ABEL ACOSTA, CLERK

NO. PD-0349-15

IN THE COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EDWARD FLORES
V.
STATE OF TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

From Appeal No. NO. 01-13-00295-CR
Trial Cause No. 12-08-08659-CR
Montgomery County

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITIONER'S PETITION
FOR DISCRETIONARY REVIEW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Scott Pawgan
122 W Davis, Ste. 116
Conroe, Texas 77301
(936) 242-6975 Phone
State Bar No. 24002739


Attorney for Petitioner


ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Index of Authorities …………………………………………………………………………ii

Statement Regarding Oral Argument …………………..…………………………………iii

Statement of the Case ……………………………………..…………………………...…1

Statement of Procedural History ……………………..……………………………….…..3

Ground for Review No. 1 ……...…………………………………………….……….…….4

DID THE COURT OF APPEALS ERR IN HOLDING THAT THE TRIAL COURT DID NOT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE GAINED AS THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE

Reasons for Review …………………………………………………………….........…4

Concise Argument…………………………………………………………………...5

Ground for Review No. 2 ……...……………………………………………….……………7

DID THE COURT OF APPEALS ERR IN HOLDING THAT THE TRIAL COURT DID NOT ERR IN ALLOWING TESTIMONY REGARDING THE TESTIMONY OF THE EXTENT OF THE METHAMPHETAMINE PROBLEM AND THE GENERAL DANGERS AND SOCIETAL COSTS OF METHAMPHETAMINE

Reasons for Review ………………………………………………………...……7

Concise Argument for Grounds for review Numbers 2 & 3……………………………....8

Conclusion and Prayer………………………………………………………………………9

Certificate of Service…………………………………………………………………………10

Appendix Follows

# INDEX OF AUTHORITIES

## Cases

Ebarb v. State, 598 S.W.2d 842, 850 (Tex. Crim. App. 1980) ................................................................. 5

Ex Parte Lane, 303 S.W.3d 702 (Tex. Crim. App. 2009) .................................................................... 8

Henderson v. State, 965 S.W.2d 710, 713 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) .................................. 6

Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) .................................................................. 6

Hunter, 955 S.W.2d at 104 ............................................................................................................... 6, 7

Lippert v. State, 664 S.W.2d 712, 720 (Tex. Crim. App. 1984) ................................................................. 5

Terry v. Ohio, 392 U.S. 1, 20–29, 88 S. Ct. 1868, 20 L. Ed. 2d 889, 44 Ohio Op. 2d 383 (1968) ............................. 6

## Rules

*Texas Rules of Appellate Procedure, Rule 66.3(c)* ........................................................................... 5

*Texas Rules of Appellate Procedure, Rule 66.3(f)* .......................................................................... 5, 8

## STATEMENT REGARDING ORAL ARGUMENT

The issues addressed involve important questions of state law. Oral argument will ensure a full, and fair exposition of the importance of these questions and how they should be resolved.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

COMES NOW Edward Flores, Petitioner in the above entitled and numbered cause, by and through his counsel, Scott Pawgan, and petitions the Court of Criminal Appeals to review the decision by the Court of Appeals, and respectfully shows this Court the following in support of this petition.

### Statement of the Case

On March 22, 2012. officers from Montgonery County Precinct Four Constables Office were serving a search warrant on Sammy Carollo's residence, 22307 Smith Road. (R.R. Vol. 6, Pages 47, 153, 164-165; Vol. 7, Page 114-15). While serving the warrant, the deputies serving as security on the outside of the property noticed a vehicle drive up the drive to the property the officers were searching (R.R. Vol. 6, Pages 35, 47-48, 153, 154, 169; Vol. 7, Page 16).

The officers then flagged down the vehicle and gave the vehicle's driver hand and verbal commands to pull his vehicle toward the officers. (R.R. Vol. 6, Pages 49, 161, 170, 174; Vol. 7, Page 17) The officers testified that the driver was not free to leave the scene once he drove onto the property. (R.R. Vol. 6, Page 209)

Upon driving onto the property, the driver then stopped the vehicle and exited the vehicle. (R.R. Vol. 6, Pages 35, 48, 172; Vol. 7, Page 16-18) According to the officers, the driver then looked around and reached back into the vehicle and threw something over the vehicle. (R.R. Vol. 6, Pages 35, 42, 174; Vol. 7, Page 18)

The deputies then approached the vehicle and its driver, as well as approach the area where the driver supposedly thru the item over the vehicle. (R.R. Vol. 6, Pages 48-

51, 174-175; Vol. 7, Page 1) The driver was identified as Appellant. (R.R. Vol. 6, Pages 51, 169; Vol. 7, Page 17)

In the area where the item was found, officers discovered a paper bag. Inside the paper bag was a white crystaline substance. (R.R. Vol. 6, Pages 35-36, 49-51, 176) The substance later tested to be 137.49 grams of methamphetamine. (R.R. Vol. 6, Page 99) Appellant was immediately handcuffed and taken into custody. (R.R. Vol. 6, Pages 54-55, 176; Vol. 7, Page 24).

After Appellant was detained, he was asked by Constable Hayden why he was there. (Vol. 7, Pages 22-23) Appellant who, even though not free to leave and having not been mirandized allegedly stated he was "going to see Sammy." (Vol. 7, Pages 22-23) The officers subsequently searched the truck Appellant was driving. (R.R. Vol. 6, Pages 68). NO paraphernalia commonly associated with an individual dealing drugs was found during the vehicle search. (R.R. Vol. 6, Pages 68, 77-80, 195).

To establish the delivery element, the State called Phillip Cash to testify. Among the things Lt. Cash testified to was that the amount of methamphetamine would be enough to make addicts out of 670 people. (R.R. Vol. 6, Page119). In addition, over Appellant's objection Lt. Cash was able to testify to such irrelevant facts such as the violence that is associated with the drug trade, (R.R. Vol. 6, Pages 123-124) the wholesale and retail price of methamphetamine (R.R. Vol. 6, Pages 131-132) and the drug distribution hubs (R.R. Vol. 6, Pages 132-133). Even though there was testimony to these inflammatory and irrelevant facts, the State never established neither Appellant nor anyone at the property being searched had the requisite money to pay for the alleged

2

Methamphetamine, nor did the State ever establish that either Appellant or anyone at the property had engaged in any violence associated with drugs or drug dealing. As a matter of fact, as discussed above, Appellant, even though supposedly engaged in such a dangerous enterprise as drug dealing, did not have a weapon on him.

During the States Closing arguments the State made an argument to convict Appellant so this will be the last day Applicant can think about selling that crap to our kids. (R.R. Vol. 7, page 108) Appellant objected to this argument but was overruled. (R.R. Vol 7, page 109-110)

After Jury selection, but before testimony in guilt innocence started, the Court held a suppression hearing. (R.R. Vol. 5, Pages 197-296). The Court denied the motion to suppress. (R.R. Vol. 6, Pages 6-7)

The jury convicted Appellant of delivery of a controlled substance. The court then held a punishment hearing. At the conclusion of the punishment hearing, The Court sentenced Appellant to life in Texas Department of Criminal Justice. (Vol. 7, Page 51-52) From this conviction and sentence, Appellant appeals.

On July 7, 2010, the Ninth Court of Appeals affirmed Petitioner's conviction in a memorandum opinion. (please see Appendix) The basis for the Court of appeals affirming the conviction was that the search was authorized under the plain view doctrine. From this opinion, Petitioner now requests this Petition be granted and this Court reverse the Court of Appeals.

## Statement of Procedural History

This is an appeal of a conviction for the offense of Possession of a controlled

substance, pg 1, four to 200 grams. Appellant pleaded not guilty to the offense charged. During trial, the trial court denied Appellant's Motion to Suppress Illegally Seized Evidence. Appellant went to the Court for punishment after a pre sentence investigation report was done and the Court held a punishment hearing. The Court assessed punishment at confinement for life in the Texas Department of Criminal Justice – Institutional Division. (R.R. Vol. 7, Page 51-52). The Ninth Court of Appeals affirmed Appellant's conviction and sentence in an opinion dated February 26, 2015. Appellant's Motion for Rehearing was due on March 13, 2015. A motion for extension of time to file a motion for rehearing pursuant to Texas Rules of Appellate Procedure 49.8 was due by March 30, 2015. A motion for extension of time to file a motion for rehearing pursuant to Texas Rules of Appellate Procedure 49.8 was filed March 30, 2015 and an extension was granted and a motion for rehearing was timely filed and denied on May 12, 2015. Appellant's Petition for Discretionary Review is due by June 11, 2015. This petition is being timely filed.

## Ground for Review No. 1

DID THE COURT OF APPEALS ERR IN HOLDING THAT THE TRIAL COURT DID NOT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE GAINED AS THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE

### Reasons for Review

1. The Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals

4

or the Supreme Court of the United States *Texas Rules of Appellate Procedure, Rule 66.3(c)*;

2. The Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision *Texas Rules of Appellate Procedure, Rule 66.3(f).*

## Concise Argument

The Court of Appeals stated in their opinion that Appellant's motion to suppress was properly granted since Appellant's interaction with law enforcement was not a seizure but merely an encounter, until the controlled substances were found in the brown bag Appellant allegedly had thrown. Appellant would respectfully disagree with the Court of Appeals since any reasonable person seeing multiple law enforcement officers approaching them and waiving for the individual driving to stop, would feel compelled to submit to law enforcements show of authority.

A person's mere presence at a location being searched with a warrant does not supply constitutionally adequate grounds for reasonable suspicion. Lippert v. State, 664 S.W.2d 712, 720 (Tex. Crim. App. 1984). An investigative stop is a seizure that is less intrusive than a full arrest. Ebarb v. State, 598 S.W.2d 842, 850 (Tex. Crim. App. 1980). Actions by the police that would communicate to a reasonable person that compliance with a police command is required constitutes a detention that must be justified by reasonable suspicion

5

When an officer has a reasonable suspicion based on articulable facts that criminal activity is afoot and a certain person is connected with the activity, the officer may make an investigative stop of that person even though grounds for arrest do not exist. Terry v. Ohio, 392 U.S. 1, 20–29, 88 S. Ct. 1868, 20 L. Ed. 2d 889, 44 Ohio Op. 2d 383 (1968). A mere request for an individual to stop or submit to a search does not constitute a "stop: and such a request need not be justified by reasonable suspicion" Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); Henderson v. State, 965 S.W.2d 710, 713 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Only if the officer conveyed a message that compliance was required has a consensual encounter become a detention. Hunter, 955 S.W.2d at 104. Actions by the police that would communicate to a reasonable person that compliance with a police command is required constitutes a detention that must be justified by reasonable suspicion. Id.

In the present case, there was no reasonable suspicion for the police to detain Appellant when he drove upon Mr. Carollo's property. There is nothing illegal or objectively could be considered illegal about driving onto someone's property, particularly where there is no gate or do not enter signs. In addition, there were additional houses that attached to the driveway Appellant drove down, and Appellant could have very easily driven to where he did to get turned and return to a residence whose entrance he had inadvertently missed down the driveway closer to the main road.

The actions by the police that day would have communicated to a reasonable person that compliance with the police command to stop Appellant's truck was required, and thus the stop of Appellant's vehicle constitutes a detention that must be justified by

6

reasonable suspicion. <u>Hunter</u>, 955 S.W.2d at 104. There were multiple officers in the yard advancing on Appellant and waiving to Appellant to stop his vehicle. Given the number of officers, and that apparent show of force from the number of officers, waiving for Appellant to stop his vehicle would have compelled most any citizen to submit to the officers' demands to stop the vehicle. Appellant was not trying to move or drive towards the officers, until the officers motioned and commanded Appellant to drive towards the officers, forcing Appellant to believe he had to submit to their authority.

Since the initial interaction with police was not merely an encounter but a seizure lacking reasonable suspicion, as detailed in Appellant's original brief in the Court of Appeals, this Court has erred in overruling Appellant's third point of error. Appellant respectfully requests that this Court reconsider the Court of Appeal's overruling of Appellant's point of error number three and grant point of error number three and reverse Appellant's judgment and sentence.

### Ground for Review No. 2

DID THE COURT OF APPEALS ERR IN HOLDING THAT THE TRIAL COURT DID NOT ERR IN ALLOWING TESTIMONY REGARDING THE TESTIMONY OF THE EXTENT OF THE METHAMPHETAMINE PROBLEM AND THE GENERAL DANGERS AND SOCIETAL COSTS OF METHAMPHETAMINE.

### Reasons for Review

1. The Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision. *Texas*

7

*Rules of Appellate Procedure, Rule 66.3(f).*

## Concise Argument For Ground for Review Number 2

The Court of Appeals stated in their opinion that Appellant's issue was not briefed or error properly preserved for Appellate review. Appellant would respectfully disagree and assert that the issue was properly briefed and preserved for Appellant review.

While the Court in its opinion, stated that Appellant had not identified particular testimony that was irrelevant and unfairly prejudicial, Appellant clearly identified in his statement of facts the irrelevant and prejudicial statements made by Lt. Cash. Appellant clearly identified among the things Lt. Cash testified to was that the amount of methamphetamine would be enough to make addicts out of 670 people. (R.R. Vol. 6, Page119). In addition, over Appellant's objection Lt. Cash was able to testify to such irrelevant facts such as the violence that is associated with the drug trade, (R.R. Vol. 6, Pages 123-124) the wholesale and retail price of methamphetamine (R.R. Vol. 6, Pages 131-132) and the drug distribution hubs (R.R. Vol. 6, Pages 132-133). (see Appellant's brief at page 4).

Appellant also clearly gave the Court of Appeals, in Appellant's brief, authority on which the ground of error was based. That authority was Ex Parte Lane, 303 S.W.3d 702 (Tex. Crim. App. 2009). (see Appellant's brief at page 13).

As far as preserving error for review, Appellant would contend that this issue was properly preserved. Appellant's trial counsel made several relevancy objections to the complained of testimony. Those objections were overruled, thus preserving the complaints for Appellant review.

Because Appellant's fourth point of error was properly preserved, and properly briefed, it was error for The Court of Appeals to overrule point of error number four without considering the error on its merits as briefed. Appellant requests that this court reconsider The Court of Appeal's overruling of Appellant's fourth point of error as not preserved and consider the point of error on its substantive grounds and then affirm the error.

## Conclusion and Prayer

Petitioner prays that this Court grant this Petition for Discretionary Review and reverse the Ninth Court of Appeals opinion and remand the case to the trial court with an order of acquittal, remand the case to the Court of Appeals to consider on the merit's Appellant's fourth point of error in Appellant's Appeal Brief or other relief as this Court feels Petitioner is entitled.

Respectfully submitted,

_____
Scott Pawgan
122 W Davis, Ste. 116
Conroe, Texas 77301
(936) 242-6975 Phone
State Bar No. 24002739

**Attorney for Petitioner**

## CERTIFICATE OF SERVICE

9

I HEREBY CERTIFY that Petitioner's Petition for Discretionary Review was filed through the State's e-filing service and through the electronic service of the e-filer, copies of the Petition were served upon the 9TH District Attorney, Montgomery County, Conroe, Texas; and to the State prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on the 11th day of June, 2015.

_____

Scott Pawgan
Attorney for Petitioner

APPENDIX

**Opinion issued February 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00295-CR

_____

**EDWARD FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas[1]**
**Trial Court Case No. 12-08-08659-CR**

---

[1] The Supreme Court of Texas transferred this appeal from the Court of Appeals for the Ninth District of Texas. Misc. Docket No. 13-9042 (Mar. 26, 2013); *see* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between our court's precedents and those of the Ninth Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

Appellant Edward Flores was charged with possession of a controlled substance with intent to deliver, to which he pleaded not guilty. *See* TEX. HEALTH & SAFETY CODE § 481.112(a). Flores pleaded true to an enhancement paragraph reflecting a prior conviction for felony burglary of a habitation. A jury found him guilty, and the trial court assessed punishment at life in prison. In this appeal, Flores brings six issues challenging his conviction. We affirm.

## Background

While law-enforcement officers were executing a search warrant on the residence of Sammy Carollo, Deputy T. Knox and Constable K. Hayden were serving as security on the outside of the property when they observed appellant Edward Flores driving up the driveway. Upon seeing the two law-enforcement officers, Flores stopped and got out of his truck. Hayden signaled for Flores to continue driving up the driveway to where the officers were located.

As Flores got back in the truck to comply, he reached inside, grabbed a brown bag, and threw it over the truck into some bushes. As Knox searched for the thrown item, Hayden approached Flores and asked what he was doing at the property. Flores responded that he was there "to see Sammy." By this time, Knox had recovered the brown bag, observed that it contained a clear bag of what he

thought was methamphetamine, and signaled for Hayden to make an arrest. Lab tests later confirmed that the bag contained 137.49 grams of methamphetamine.

Flores was charged with possession of a controlled substance with intent to deliver. A jury found him guilty, and the trial court sentenced him to life in prison. This appeal followed.

**Analysis**

In six issues, Flores contends that (1) the evidence was legally insufficient to support his conviction; (2) the trial court erred in making prejudicial statements to the jury; (3) the trial court erred when it denied his motion to suppress physical evidence gained as the result of an illegal search and seizure; (4) the trial court erred when it denied his motion to suppress oral statements made in custody; (5) the trial court erred in allowing testimony regarding the dangers and social costs of methamphetamine; and (6) the trial court abused its discretion when it permitted improper jury argument.

**I.     Legal sufficiency of the evidence**

In his first issue, Flores argues that the evidence is legally insufficient to support his conviction because no evidence establishes that he intended to deliver the methamphetamine.

When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any

3

rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We must give deference to the factfinder to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To prove possession with intent to deliver a controlled substance, the State must show that a defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance, and (3) knew that the substance in his possession was a controlled substance. TEX. HEALTH & SAFETY CODE § 481.112(a); *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Intent can be inferred from circumstantial evidence, including the acts, words, and conduct of the defendant, as well as evidence that the defendant possessed the contraband; an oral expression of intent is not required. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Utomi v. State*, 243 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Courts have considered several factors in determining whether such intent is supported by the evidence, including: (1) the nature of the location where the defendant was arrested; (2) the quantity of the drugs the defendant possessed; (3) the manner of packaging; (4) the presence, or lack thereof, of drug

4

paraphernalia (for use or sale); (5) the defendant's possession of a large amount of cash; and (6) the defendant's status as a narcotics user. *Utomi*, 243 S.W.3d at 82. The expert testimony of law enforcement officers, experienced with illicit drug trafficking, also may be used to establish a defendant's intent to deliver a controlled substance. *Id*.

Flores argues that, considering the above factors, the evidence fails to establish his intent to deliver because only trace amounts of drugs were found at the location where he was arrested, the drugs were not packed in a way that indicated future sales, no paraphernalia was present and no cash was recovered during the arrest, and there was no evidence that he was a drug user.

The State, however, points to numerous factors that support the inference of intent. First, Flores was arrested at the end of a lengthy rural driveway leading to a residence that officers were concurrently searching for methamphetamine. That only trace amounts of methamphetamine were discovered inside the searched house does not refute the permissible inference that Flores intended to deliver the drugs there, possibly to resupply the house.

Second, Flores possessed 137.49 grams of methamphetamine, a large quantity that indicated an intent to deliver. One of the State's witnesses, Lieutenant Philip Cash, testified that the quantity was the equivalent of 670 doses of methamphetamine, which indicated that it was "not for personal use."

Third, the methamphetamine was packaged in one large bag, in a quantity that Cash testified would typically be moved from one drug trafficker to another. Although Flores suggests that the lack of separate packing for small amounts of methamphetamine indicates that the methamphetamine was not for distribution, Cash testified that the packaging in this case merely indicated that had not been prepared for direct sale to a consumer on the street. We previously have held that bulk packaging may indicate intent to deliver when the quantity possessed is greater than typical for personal use. *See Reed v. State*, 158 S.W.3d 44, 49 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (large amount of liquid codeine packaged in large pint-sized bottle indicated intent to deliver when officer testified that drug was typically diluted in that manner before distribution).

Fourth, while the officers found no drug-sale paraphernalia on Flores or inside his vehicle, there is also no evidence that they found drug-use paraphernalia. We view the evidence in the light most favorable to the jury's finding, and the lack of drug-use paraphernalia allows an inference that Flores did not intend to use the methamphetamine himself. Accordingly, the absence of drug-use paraphernalia permits an inference of an intent to deliver. *See Reed*, 158 S.W.3d at 48 (stating that the absence of either drug use paraphernalia or drug sale paraphernalia can be considered in determining intent); *Mack v. State*, 859 S.W.2d 526, 529 (Tex.

6

App.—Houston [1st Dist.] 1993, no pet.) (determining that absence of drug-use paraphernalia is circumstantial evidence suggesting intent to deliver).

Finally, Flores did not have any cash in his possession at the time of his arrest. He suggests that this weighs against a finding of intent to deliver. Cash explained at trial, however, that large narcotics traffickers frequently keep money and drugs separated to prevent "rip offs" during the transactions. Consequently, he explained that it is not uncommon for no money to be recovered along with a large amount of drugs

Thus, viewing the evidence in the light most favorable to the jury's finding, we conclude that a rational factfinder could have reasonably inferred that Flores possessed the 137.49 grams of methamphetamine with an intent to deliver it to another. Accordingly, we hold that the evidence is legally sufficient to support his conviction for the offense of possession with intent to deliver a controlled substance. *See Brooks*, 323 S.W.3d at 902.

We overrule Flores's first issue.

## II.    Trial court's commentary on methamphetamine

In his second issue, Flores contends that the trial court improperly commented on the weight of the evidence. Before the jury retired for deliberations, the court informed them that they would have access to all of the evidence at trial, except for the clear bag of methamphetamine recovered from the bushes. The court

explained: "I don't feel comfortable sending that back. If you want it sent back, I will make it available. It's just—it's just a dangerous substance. I don't want anybody getting hurt."[2]

Judges are prohibited from making "any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. art. 38.05. To constitute reversible error, the court's comment must be reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.). In determining whether the comment was either reasonably calculated to benefit the State or to prejudice the defendant, we must examine whether the trial court's statement was material to the case. *Id*. A statement is material if the jury had the same issue before it. *Id*. Furthermore, if we determine beyond a reasonable doubt that the court's error did not contribute to the conviction, we must hold that the error was harmless. *Id*.

---

[2]    The State argues that Flores failed to preserve this issue for appellate review. Immediately after the jury retired for deliberations, defense counsel objected "to the court telling the jury that it's a dangerous substance. [The] objection is that it's a comment on the weight of the evidence." The State contends this is different than Flores's argument on appeal, that the court's remarks were improper because they conveyed its opinion of the case. We conclude the objection was sufficient to alert the trial court to the concern raised on appeal.

Here, the court's statement explained why the jury would not be permitted to take the methamphetamine into the jury room. This remark reflects an acknowledgement that the substance was, in fact, methamphetamine. But the disputed issue at trial was whether Flores intended to deliver the substance, not whether the substance actually was methamphetamine. Consequently, even if the court's statement regarding the dangers of methamphetamine constituted error, we conclude, beyond any reasonable doubt, that it did not contribute to Flores's conviction. *See id.*

We overrule Flores's second issue.

## III.    Motion to suppress physical evidence and oral statements

In his third and sixth issues Flores argues that the trial court erred in denying his motions to suppress physical evidence and oral statements.

When reviewing a trial court's ruling on a motion to suppress, we must view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We afford almost total deference to a trial judge's determination of historical facts, especially when the facts are based on an evaluation of credibility and demeanor. *Id.* But we review de novo legal conclusions based on those facts. *Id.*

## A.    Physical evidence

Flores contends in his third issue that the trial court erred when it denied his motion to suppress the bag of methamphetamine because it was obtained as a result of an illegal search and seizure. He contends that the law-enforcement officers did not have reasonable suspicion to detain him when he drove up the driveway of the property where the officers were executing a search warrant.

There are three types of interactions between citizens and law-enforcement officers: (1) consensual encounters; (2) investigatory detentions; and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Consensual encounters do not implicate Fourth Amendment protections. *Id.* at 411; *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991). Thus, officers are free to stop and request information from a citizen without justification. *Woodard*, 341 S.W.3d at 411. A citizen may terminate such a consensual encounter at will. *Id.* An encounter is consensual as long as a reasonable person would "feel free to disregard the police and go about his business." *Bostick*, 501 U.S. at 434. A citizen's acquiescence to an officer's request for information does not elevate a consensual encounter to a detention or seizure, even if the officer does not communicate to the citizen that the request may be ignored. *Woodard*, 341 S.W.3d at 411.

No bright-line rule governs when a consensual encounter becomes a seizure, but the encounter generally is no longer consensual when an officer restrains a citizen's liberty through force or showing of authority. *Id.* "If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred." *Id.* We consider the totality of the circumstances to determine whether a reasonable person in the defendant's position would have felt free to ignore the request or terminate the interaction. *Id.* Although courts consider the surrounding circumstances, including the time and place, the officer's conduct is the most important factor in determining whether an encounter was consensual or a Fourth Amendment seizure. *Id.*

Initially, the burden is on the defendant to rebut the presumption of proper conduct by law enforcement and show that a seizure occurred. *Id.* at 412. If the defendant meets this burden, then the burden shifts to the State to demonstrate that the seizure was nevertheless supported by either reasonable suspicion or probable cause, whichever is applicable. *Id.*

An officer may stop and briefly detain a person for investigative purposes only if the officer has a reasonable suspicion that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude

11

that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id*. Whether an officer had reasonable suspicion depends on the totality of the circumstances. *Id.* at 492–93.

Flores contends that the brown bag of methamphetamine that he threw was obtained as a result of an unlawful detention. To this end, he characterizes the interaction with the officers as a detention from the moment the officers waved at him. Therefore, he argues that he was detained by the officers at a time when they did not have reasonable suspicion to justify the detention, and that the drugs that he threw into the bushes were recovered as a result of a Fourth Amendment violation.

In spite of Flores's characterization of the entire encounter as a detention, the totality of the circumstances indicates that no Fourth Amendment seizure occurred until after the brown bag of methamphetamine was thrown into the bushes. The officers testified that Flores stopped his truck "immediately" upon turning onto the property and making eye contact with them. At that time, Flores exited the vehicle and the officers motioned for him to drive forward. Instead, he grabbed the brown bag and threw it into the bushes. Under these circumstances, the officers' actions–merely motioning to Flores to drive forward–did not amount to force or a show of authority which restrained Flores's liberty. *See Woodard*, 341 S.W.3d at 411.

Consequently, the encounter had not yet escalated to a detention when Flores threw the bag of methamphetamine into the bushes, and no justification was necessary for the officers to motion Flores forward. *See id*.

We overrule Flores's third issue.

**B.    Oral statements**

In his sixth issue, Flores argues that the trial court erred in denying his motion to suppress his oral statement to Constable Hayden that he "was there to see Sammy." He asserts that this statement was made while he was in custody, and before he received *Miranda* warnings.

The Fifth Amendment requires a defendant subjected to custodial interrogation must receive *Miranda* warnings, and the failure of law enforcement to advise the defendant of those rights prohibits the later use of those statements against him. *See Miranda v. Arizona*, 384 U.S. 436, 104 S. Ct. 3138 (1966).

Here, the parties dispute only whether Flores was in custody at the time he told Hayden that he "was there to see Sammy." The determination of whether a defendant is in custody requires a court to "examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest." *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010). This is an objective determination, and the primary question is whether a

reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

A routine stop does not automatically place a person in custody for *Miranda* purposes, but such a stop may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restricted to the degree associated with a formal arrest. *Id*. at 372. Thus, in *State v. Ortiz*, the Court of Criminal Appeals held that a routine traffic stop had escalated beyond a detention at the time the suspect was questioned by the police, because: (1) officers expressed their suspicion that Ortiz possessed drugs or knew that his wife was in possession of drugs; (2) the detention had escalated beyond that of a routine traffic stop because at least two police cars and three officers, as opposed to the usual one car and two officers, were present when he made the statements; (3) officers handcuffed him when a pat-down revealed something illegal or dangerous in his wife's possession; and (4) after he was handcuffed, officers informed him that something illegal had been found on his wife, signaling that he was under detention for something more serious than a speeding infraction. *Id*. at 373–75.

In this case, the officers approached Flores to speak with him after he threw the brown bag into the bushes. As one of the officers searched for the bag, Flores

14

told the other that he "was there to see Sammy." At the time Flores made the statement to Hayden, there had been no formal arrest and his freedom of movement was not restricted in any manner. Examining all the circumstances, we conclude that a reasonable person would not have determined that the detention was a restraint on his movement comparable to a formal arrest. *See id*. at 372. Nor were any of the factors present that led the *Ortiz* Court to hold that a routine traffic stop had escalated to a formal arrest. At the time he made his statement, Flores was not questioned by an unusual number of officers, handcuffed, or made aware that the officers had discovered the methamphetamine. *See id*. at 373–75.

Because Flores was not in custody at the time he made the contested statement, the trial court did not err when it denied the motion to suppress the statement.

We overrule Flores's sixth issue.

## IV. Admission of testimony regarding methamphetamine

In his fourth issue, Flores argues that the trial court erred when it allowed testimony regarding the dangers and social costs of methamphetamine.

During the guilt-innocence phase of trial, Lieutenant Phillip Cash, a narcotics officer, testified to matters regarding methamphetamine, such as its production and addictive qualities. Flores argues generally that Cash's testimony was similar to testimony in *Ex parte Lane*, 303 S.W.3d 702 (Tex. Crim. App.

2009), in which the Court of Criminal Appeals held that testimony regarding the societal problems caused by methamphetamine was irrelevant and unfairly prejudicial at the punishment phase of a trial for unlawful possession of a controlled substance. *Lane*, 303 S.W.3d at 714–15.

A complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a). Furthermore, a defendant's brief must "contain a clear and concise argument for the objections made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The failure to present argument and authorities results in waiver of the point of error. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

The State charitably identifies several objections to Cash's testimony based on relevance, but much of Cash's testimony that elicited objections was later admitted without objection. That testimony generally discussed particulars of the methamphetamine trade, including how the drug is produced, how money is handled, and the danger of violence for its participants. Under such circumstances, there can be no reversible error in admitting the evidence. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

16

Moreover, Flores does not identify any particular testimony that should be deemed irrelevant and unfairly prejudicial like the testimony in *Lane*. In that case, the court declined to hold that all testimony regarding the dangers and societal costs of drug use was irrelevant at the punishment stage of a trial for possession or delivery of controlled substances, but held that the particular testimony at issue was irrelevant because it went beyond the context for the offense and unfairly prejudiced the defendant. *See Lane*, 303 S.W.3d at 714–15. Specifically, the narcotics officer in *Lane* testified that he was familiar with people who had died from methamphetamine, including a woman who used the drug during her pregnancy, and that the community has to subsidize the costs of "health care, clean up, and theft associated with methamphetamine" because its users are typically unemployed and steal to get drug money. *Id*. at 713. Flores does not point to any testimony that compares to the testimony in *Lane*, and he makes no meaningful argument that the entirety of Cash's testimony was irrelevant or prejudicial.

Because he has failed to adequately brief the issue for review or demonstrate that it was preserved in the trial court, we overrule Flores's fifth issue. *See* TEX. R. APP. P. 33.1(a), 38.1(i).

## V. Closing argument

In his fifth issue, Flores contends that the trial court erred when it overruled his objection to improper jury argument. Flores asserts that the prosecutor's

statement during closing argument, directed to him, that "[t]oday will be the last day you can ever think you can sell that crap to our kids," was nearly identical to prohibited argument in *Lane* in which the prosecutor stated that the defendant was bringing drugs into the county to poison children and turn them into addicts. *See Lane*, 303 S.W.3d at 711–12.

However, Flores's specific objection at trial was to the prosecutor getting too physically close and speaking directly to him. Flores did not object to the statements as improper jury argument. A defendant's failure to object to jury argument or pursue an adverse ruling to his objection forfeits his right to complain about the argument on appeal. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). Furthermore, the point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

Because Flores did not object to the prosecutor's statements as improper jury argument, he has forfeited the issue on appeal. *See Threadgill*, 146 S.W.3d at 670.

We overrule Flores's fifth issue.

**Conclusion**

Having overruled Flores's six issues, we affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

19

Print this page

# Case # PD-0349-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 06/11/2015 10:47:29 PM |
| Case Number | PD-0349-15 |
| Case Description | |
| Lower Court Number | |
| Assigned to Judge | |
| Attorney | Scott Pawgan |
| Firm Name | Individual |
| Filed By | Scott Pawgan |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Scott Pawgan Court Appointment Account |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | PDR 1 |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | | The petition for discretionary review does not contain a certification of compliance |

| Other | 06/12/2015 11:27:06 AM | with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. Your petition remains due June 10, 2015 and is untimely at this time. |

## Documents

| *Lead Document* | Flores PDR with Attachment.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Jason Larman jason.larman@mctx.org | Individual | EServe | Sent | Yes | 06/12/2015 08:56:28 AM |
| Lisa C. McMinn lisa.mcminn@spa.texas.gov | State Prosecuting Attorney's Office | EServe | Sent | Yes | Not Opened |